JUDGE SIMPSON,
dissenting from tlie decision of the majority of the court, delivered the following opinion:
Inasmuch as the writing upon which this action is founded, although in the form of a bill of exchange, has not on its face the name of a drawer, it is contended that it is invalid as a mercantile paper, notwithstanding it has, as parties to it, an acceptor, payee, and indorser, because, as it is argued, a drawer is an essential party to a bill of exchange, and therefore this instrument cannot be treated as one, nor regarded as obligatory on the other parties to it.
It is believed that this objection, when fairly scrutinized and tested by well established principles of the law merchant, will be found to be wholly untenable, and entirely formal and unsubstantial in its character.
In theory, three persons are necessary to a bill of exchange : a drawer, a drawee, and a payee or holder; but in practice, the same person may be drawer and payee, or may even be drawer, acceptor and payee, and will be liable as such upon his indorsing the bill.
This doctrine results from the general principles of the law merchant, which have been adopted for the purpose of encour *207 aging trade and facilitating commercial transactions. It is also entirely consistent with the legal maxim, that two persons only are absolutely necessary to a valid contract, namely : the person binding himself to perform some act, and the person in whose favor that act is to be performed.
It has also been decided that an indorser is responsible, although the original drawer be a fictitious person. (Leach vs. Hewitt, 4 Taunt., 731.) And a bill drawn by a married woman, although void as to her, may be of full force and obligatory as between the other parties to it. {Story on Bills, 97.)
Now, would it not be a legal anomaly to hold, that a bill in the name of a fictitious drawer, or one, the drawer of which was incapable in law to make a contract, and therefore not obligatory on her, should be valid and obligatory on the indorser, and yet that the indorser would not be bound, merely because the name of a drawer was entirely omitted, and did not appear on the face of the bill ? Any name as drawer, however fictitious or imaginary, is sufficient to render the bill valid; but the absence of the name of a drawer altogether is a fatal defect, and wholly destroys the validity of the instrument. Truly this is a rigid adherence to mere form, without any regard whatever to substance. If such be the law, much as we may flatter ourselves that we have advanced in emancipating the science from the trammels of mere form in general, yet it will appear that in the application of the law merchant, which is usually expounded with great liberality, we adhere strictly to form, so far, at least, as the structure of the instrument is concerned. Unless it be in the exact form of a bill of exchange, it can have no validity under the law merchant.
The only parties to a bill of exchange between whom a direct undertaking exists, are the acceptor and the payee. The former, by his acceptance, agrees to pay to the latter the amount of the bill according to its tenor and effect. Here such an undertaking existed; the acceptor agreed to pay the sum named in the instrument to the payee, and the latter, by his indorsement, transferred the benefit of this promise to the holder. What more was necessary to create a liability upon the parties? There is a direct promise to pay the money, and *208 a transfer of that promise. The instrument is drawn in the form of a bill of exchange, and is made negotiable on its face. It is not only made negotiable by its terms, but was in fact indorsed and negotiated by the payee. He contends, however, that he is not liable upon his indorsement, because the name of a drawer is not subscribed to the instrument, although in all other respects it is a complete and perfect bill of exchange.
Let us examine this objection, looking alone to the nature of the instrument. A bill of exchange is, both in theory and in practice, a written request by one person to another to pay to a third a sum therein speciñed, at a designated period. Now, suppose the person making the request should fail to subscribe his name to the writing, and the person to whom the request is directed, knowing the hand-writing, or having information which satisfies him that such a request has been actually made, undertakes by his acceptance to comply with it, and the payee, after the instrument has been thus accepted, indorses it for value, would not such a transaction be entirely consistent Avith the nature of a bill of exchange, as well as the purpose for which it is created ? The drawee may, for his own security, refuse to accept, unless the name of the drawer is subscribed to the bill. But if he waives this privilege, and accepts the bill, what right has he to say he is not responsible on his acceptance, because the name of the drawer was not signed to the instrument ? And if, under such circumstances, the payee should receive and indorse the bill, what right would he have to say to his indorsee, I am not responsible on my indorsement, because the di'.awer of the bill did not sign his name to it? He might have refused to receive it from the drawer unless his name was subscribed to it; but having received it, procured its acceptance, and negotiated it by his indorsement, he has treated it as mercantile paper, and if in so doing he acted indiscreetly or improvidently, he will not be permitted to rely upon such indiscretion, and thereby take advantage of his own wrong, to the prejudice of third persons. But I contend there would be nothing wrong in such a transaction, and that the whole proceeding would be in strict accordance with the true nature and design of such instruments.
*209 Or suppose that the payee himself is the drawer of a bill, and fails to sign his name to it, but procures the drawee to accept it, and then negotiates and indorses it, would it be contended by any one that, under such circumstances, he would not be responsible to his indorsee ? If, therefore, in the cases mentioned, the indorser would be liable on his indorsement, of which it seems to me there cannot be any doubt, it follows that the name of a drawer to a bill is not an indispensable requisite to the validity of the instrument.
If, however, a drawer be essential to the validity of a bill, this requisite exists in the present case. The instrument was indorsed by the appellant, and the doctrine is well settled that the act of indorsing a bill is equivalent in its effect to the drawing of a bill, the indorser being considered as a drawer on the original drawee. (Chilty on Bills, 142.) It is in fact the same as a new bill drawn by the indorser on the acceptor in favor of the indorsee. (Van Staphorst vs. Pearce, 4 Mass. Rep., 258.) By the indorsement the acceptor is requested to pay the amount of the bill to the indorsee. This request is made by the in-dorser, who thus becomes both in form and effect a drawer in favor of the indorsee. The indorsement of a bill, therefore, is not merely a transfer, of the paper, but is a new and substantive contract between the parties. (Slacum vs. Pomery, 6 Cranch, 222.)
It is contended, however, that an indorser is only a new or an additional drawer, and that he cannot become such, where there is no original drawer, as in the present case. I am unable to perceive the force of this reasoning, or-why the effect of an indorsement should depend upon the existence or non-existence of an original drawer; but in addition to this, the position assumed is in direct conflict with the doctrine regulating the liability of an indorser. His liability is that of a drawer, and is entirely independent of that of the original drawer on the bill. The holder may sue him before the bill becomes due, if the drawee refuse to accept, his liability to the indorsee being exactly similar to that which a drawer of a bill is under to thé payee. (Ballingalls vs. Gloster, 3 East, 483.) And the indorsee can sue the indorser without any reference whatever to the *210 original drawer’s breach of contract, (Heylyn vs. Adamson, 2 Burr., 669, 675,) which clearly proves that his undertaking is entirely independent'of that of the original drawer.
But the distinct and independent nature of the contract between the indorser and indorsee is still more fully exemplified by the principle which determines, that as between them, it makes no difference whether the bill be originally negotiable or not. (Story on Bills, sec. 108.) Although a bill as originally drawn should not be negotiable, yet it may become a negotiable instrument as between the indorser and indorsee, in consequence of the indorsement operating as the drawing of a new bill, and thereby imparting to the instrument a negotiable quality which it did not previously possess. Could anything more forcibly and conclusively establish the correctness of the proposition that an indorsement is equivalent to the drawing of a new bill, and that the liability it imposes on the indorser does not depend upon that of the original drawer, or even upon the fact whether or not there be any original drawer on the bill?
But it is said that this instrument could not be regarded as a bill of exchange before it was indorsed, and that there is nothing to show that the indorser intended by his indorsement to make it negotiable. It is in form a bill of exchange, drawn on W. G. Rogers, accepted by him, and made payable to the order of John Tevis, by whom it was indorsed to the plaintiff. It is in every respect a complete and formal bill of exchange, except that it does not contain on its face the name of a drawer. Now, it might well be asked, what did Tevis intend to effect by his indorsement of the paper, if it were not to make it negotiable ? He certainly intended by it to make himself liable for the amount in some manner or other. It is said by Chitty in his treatise on bills, (page 109,) that any words in an instrument, from which it can be inferred that the person making it, or any other party to it, intended it to be negotiable, will give it that quality against that person. Here the instrument was in words and in form negotiable, and was actually negotiated by the very person'who now contends that it is not a negotiable paper; for it must be recollected that the controversy in this *211 case is with the indorser, who has appealed from the judgment against him in the circuit court. If he be not liable upon the instrument, as an indorser of negotiable paper, I should like to know in what his liability consists. The writing is not, either. in form or substance, a promissory note, so as to hold him responsible as assignor. If it be obligatory upon him at all, it can only be by reason of his indorsement upon it as a negotiable instrument. That the parties to it understood it to be and treated it as a bill of exchange, does not admit of a rational doubt. If, then, the nature and character of the contract is to be ascertained from the intention of the parties, the point in issue is at once settled. The writing is in the precise form of a negotiable instrument; it is not pretended that the parties designed it to have an efFect different from its purport; and the inevitable conclusion, therefore, is, that they intended it to be what it purports to be, namely, a bill of exchange.
Now, when the obvious intention of the parties can be carried into efFect, as in this case, consistently with the well established principles of the law, I am entirely unwilling to permit it to be defeated upon a mere formal and technical objection to the writing, which was indorsed and negotiated by the appellant himself, especially when it will result in manifest injustice, and irreparable injury to the innocent holder of the paper. Can it be that Tevis, who indorsed this paper, and thereby put it in circulation, shall be permitted to say in a court of justice that he is not responsible as indorser, because the paper, not having all the formal parts of a bill of exchange, is not negotiable? Rogers, by his acceptance, agreed to pay the amount named in the instrument to Tevis, the payee, and he by his indorsement requested him to pay it to the holder; and yet he is allowed, after he has made the paper negotiable and put it into circulation by the act of indorsing it, to defeat his own liability as indorser, on the ground that it has not all the formal parts of a bill of exchange. No such defense can be relied upon by an indorser; he guaranties the validity of the instrument, in every respect, by the act of indorsing it, and is estopped to deny its validity; this is a well established principle of the law merchant.
*212 But it is said, the authorities decide that a drawer is indispensable to a bill, and that an instrument cannot be a bill unless the name of a drawer is on its face, and two cases are referred to in support of this position. Let us examine those cases and ascertain what was decided by them. The case of Vyse vs. Clarke, (5 Carrington and Payne, 403,) was an action of assump-sit for goods sold and delivered. The defendant pleaded that the plaintiff had drawn a bill on him for the amount due him, which he, the defendant, had accepted. The plaintiff replied that no such bill was drawn and accepted, as the defendant in his plea alleged. This was the issue between the parties. It was proved on the trial that the defendant had written his name as acceptor on a blank bill of exchange, and had handed the paper to the plaintiff’s agent, who proved that he had no authority to sign bills or to put the name of his principal as drawer, and had not done so. It also appeared that the bill had been sent by the agent 'to the plaintiff who did not sign it as drawer, or accept it in payment of his debt, but brought the action against the defendant on the account.
The issue between the parties was whether a bill had been drawn by the plaintiff and accepted by the defendant. The proof showed clearly that it had not been signed by the plaintiff as drawer. The court decided that the defendant had failed to make out the issue. There was in fact nothing else to decide. Baron Vaughan, however, remarked that if the agent had no authority to sign the bill, and it was not adopted by the plaintiff, it was not a bill drawn by him. He then made use of the remark relied upon, that “ there must be a drawer to a bill;” but he also remarked, “I do not say that a person may not so deal with such an instrument as to make it a bill.” Now what kind of an instrument was he speaking of that might be so dealt with as to make it a bill? It was evidently one similar to that which was then before the court. What did he mean by saying that it might be so dealt with as to make it a bill? He could not have intended merely to say that the plaintiff, b)r signing it as drawer, would by so doing have so dealt with it as to make it a bill, for that was conceded on all hands; and it would not, if signed by the plaintiff as drawer, have then *213 been sucb an instrument as he was speaking of. He manifestly meant by what he said about the instrument under consideration, that it might be so dealt with in its then imperfect form and condition as to make it a bill. So far, therefore, as these remarks can be relied upon as authority, they establish a conclusion directly opposite to that which has been attempted to be deduced from them.
The case, however, really proves nothing, except that under the issue made by the parties it was necessary to show that the instrument had been signed by the plaintiff, and, therefore, in that particular case, a drawer was necessary.
The acceptor was in fact the only party to the instrument. His acceptance, therefore, did not create any obligation upon him. He had not entered into a contract with any person, and therefore the writing could not have any legal effect whatever. But suppose the plaintiff had agreed to take the defendant’s acceptance in payment of the debt, and being the payee, had indorsed and sold.the bill without signing it as drawer, would he not then, in the language of the judge, have so dealt with the instrument as to make it a bill? Would he be permitted, after having negotiated the instrument, to say : true, I indorsed the paper, and might have made it a valid bill by signing my name as drawer before it was negotiated, but not having done so, my indorsement does not render me liable? Such a defense shocks the moral sense of every man, and should not be sustained unless it be imperiously demanded by some rigid and inflexible rule of law.
The other case referred to, of Stoessiger vs. The South Eastern Railway Company, (25 vol. English Law and Equity Rep., p. 235,) tends less, if possible, to sustain the position contended for, than the case already examined. A writing which purported to be addressed to Mr. Cruttenden, and which requested him to pay to the writer, whose name was not signed to it, a certain sum therein named, three months after date, had an acceptance written across it, which was subscribed by Crutten-den. No other name appeared upon the paper, nor was it made payable to an}' person. This writing had been stolen from the defendants, who, as carriers, had undertaken to con *214 vey it from one place to another, and the action was brought against them to recover its value. The only question before the court was whether or not the paper was of any value when it was delivered to the defendants. The judges decided that it was neither a bill, nor a promissory note, nor a security for money, and therefore it was of no intrinsic value beyond the value of the paper. The name of the acceptor was the only name upon the paper; there was no payee, drawer, or indorser, and it is impossible to perceive on what ground it could have been regarded as a contract between him and any other person. It is manifest, therefore, that the point there decided has no analogy whatever to the question in this case. But an intimation was given by one of the judges, in delivering his opinion, on the very question involved in this case. Erie, justice, after deciding that the writing was of no value, said he would limit his opinion to that point, “ because an acceptance, wanting only the name of the drawer, might, under certain circumstances, be of value.” He did not state what circumstances he referred to; but certainly, if the instrument would be valid under any circumstances when the name of the drawer was wanting, it should be so regarded in this case.
It seems to me, therefore, that these cases, instead of supporting the doctrine contended for, do, so far as they have any bearing at all upon the questions at issue, conduce to establish the opposite principle, and are not at all in conflict with the other cases which decide that an indorsement is, in legal effect, the drawing of a new and independent bill.
As we have looked to the decisions of other courts, let us now see what this court has decided that has a bearing on the subject. In the case of Piner vs. Clary, (17 B. Mon., 660,) it was decided, that Clary having indorsed a certificate of deposit made payable to his order, and subscribed bjr P. B. Manchester, had thereby rendered the paper negotiable, upon the express ground that the indorser should be considered as the drawer of a check or bill on Manchester, for the amount named in the certificate. There the certificate of deposit was treated as an acceptance, payable to the order of Clary, and he having indorsed the instrument, it became, in the opinion of the co urt *215 a valid bill. The same effect was given to an indorsed certificate of deposit in the case of Miller vs. Austin, &c., (13 Howard's Rep. Sup. Court, 228.) Now, these cases seem to me to have much more application to the question under consideration than the two cases referred to on the other side.
It has been suggested, that although the instrument is not valid as a bill of exchange, yet that Tevis might be held responsible on it as such, upon an allegation that he indorsed it, and put it into circulation as a negotiable instrument. I suppose the instrument must derive its legal effect from its own form and contents, and not from extrinsic circumstances. If it be a bill of exchange, the indorser could not impart to it any other character, even by an express' declaration of his intention that it should not be so regarded. And if it be not a bill of exchange, he could not make it such by a declaration that he intended it to have that effect. It may be that it was drawn by the indorser himself; if so, an allegation of that fact would no doubt preclude him from relying upon his own failure to subscribe his own name as drawer.
It seems to me, therefore, upon every view of this case that I have been able to take, that the instrument being payable to the order of Tevis, and indorsed by him, his indorsement was, both in form and legal effect, an order in favor of the holder, on Rogers as acceptor, for the amount named in the bill; and whether the instrument be in legal contemplation a bill of exchange or not, that he is responsible on it as a mercantile instrument. His indorsement was certainly a request to the acceptor to pay the amount named in the instrument to the holder thereof. As the drawer of an order to that effect, he was liable, if the order was not paid, whether the instrument was a bill of exchange or not. I have not heard any reason given why he should not be held liable on his order, nor has it been contended that his indorsement did not amount to an order on the acceptor. Indeed, this is so evidently the effect of an indorsement, that I suppose it wall not be controverted. My conclusion, then, is, that the instrument is a good bill of exchange; but whether it be or not, that Tevis is liable upon it as the drawer of an order upon the acceptor, in favor of the *216 plaintiff, for the amount named in the instrument. Orders are invariably regarded by this court as mercantile paper, and treated as domestic bills of exchange. I therefore deem the decision of the circuit judge to be correct, and am of the opinion that the judgment ought to be affirmed.